UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CARL E. DAUSCH, JR.,

    Plaintiff,

v.                                                  Case No. 3:15-cv-421-J-39JBT

CORIZON CORPORATION, et al.,

    Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff, a former inmate of the Florida penal system,[1] is proceeding in this action on a pro se Amended Civil Rights Complaint (Amended Complaint) (Doc. 6) with exhibits (P. Ex.). Plaintiff names Corizon Corporation (Corizon); Sergio Lagman, M.D.; Olugbenga Ogunsanwo, M.D.; Isabel Rodriguez, M.D.;[2] and G. A. Espino (Dr. Espino) as defendants. In the Amended Complaint, Plaintiff asserts Defendants were deliberately indifferent to his shoulder injuries and pain, and Hepatitis C condition by failing to provide adequate medical treatment in violation of the Eighth Amendment and Florida's medical malpractice law. Plaintiff seeks loss of future earnings, as well as compensatory and punitive damages.

Before the Court is Defendant Gonzalo Espino's Motion for Final Summary Judgment (Espino Motion) (Doc. 59), including Dr. Chad Jeremy Zawitz's Affidavit (Zawitz Aff.) and Plaintiff's deposition transcript (P. Depo.). Plaintiff filed his response to the

---

[1] Plaintiff is currently an inmate confined in the Indiana state prison system.
[2] On July 7, 2015, Isabel Rodriguez, M.D. was dismissed from this action (Doc. 10).

Espino Motion. See Plaintiff's Brief in Opposition to Defendant Dr. Espino's for Summary Judgment Motion (Response) (Doc. 69) with exhibits (Resp. Ex.).

## II. Summary Judgment Standard of Review

The Eleventh Circuit set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law controls which facts are material and which are irrelevant. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).
>
> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. See Bennett v. Parker, 898 F.2d 1530, 1532–34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that

> was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, 572 F. App'x 692, 694-95 (11th Cir. 2014) (per curiam) (footnote omitted).

### III. Statement of Facts[3]

On May 30, 2012, Plaintiff was placed on death row[4] at the Florida State Prison (FSP), and underwent an initial medical intake screening. Amended Complaint at 4; Zawitz Aff. Ex. B-1 at 232-33. At the screening, Plaintiff informed two nurses that (1) he had Hepatitis C and wanted to be treated for the disease and (2) he had reconstructive right shoulder surgery and a "full thickening tear in his left shoulder that needed repair[]." Amended Complaint at 4-5. Further, Plaintiff "explained that he had Acromioclavicle Degenerative Joints in both shoulders and then requested a medical front cuff pass." Id. at 5. The nurses told Plaintiff that he would not be given a front cuff pass, but that he would be "black box cuffed"[5] behind his back until his execution. Id. Dr. Lagman examined Plaintiff and prescribed the same medications Plaintiff took at the time he entered FSP, including a thirty-day supply of Excedrin for pain. Zawitz Aff. Ex. B-1 at 334, 356.

---

[3] The Court assumes all the facts in the light most favorable to Plaintiff and draws all inferences in Plaintiff's favor. See McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). The Court presents the facts that are relevant to Plaintiff's claims against Dr. Espino.
[4] On June 12, 2014, the Florida Supreme Court vacated Plaintiff's convictions and sentences. See Dausch v. State, 141 So. 3d 513 (Fla. 2014).
[5] A black box is a rectangular device that fits over a pair of handcuffs in order to limit hand movements and prevent access to the handcuff's key holes. See Wean v. Budz, 589 F. App'x 488, 489 n.1 (11th Cir. 2014).

On July 11, 2012, Dr. Espino assessed Plaintiff on a follow-up to Plaintiff's labwork and to check Plaintiff's hypertension medication. Id. at 329. Dr. Espino noted Plaintiff's chronic right shoulder pain and the right shoulder surgery performed in 2009. Id. On July 13, 2012, in response to Plaintiff's sick call request for a front cuff pass, S. D. Tollick, CMTC (Correctional Medical Technician Certified) examined Plaintiff. Id. at 327. Plaintiff provided Tollick with an MRI from his previous shoulder injury and stated "it's tore again." Id. During the examination, Tollick found negative "edema, discoloration, crepidus to bilat shoulders," a "well healed scar from previous surgery," and that Plaintiff was "able to raise arm to should[er] height without difficulty or grimace." Id. Plaintiff's "[c]hart [was forwarded] to clinician for review of front cuff pass request." Id. Dr. Espino reviewed Plaintiff's medical records and denied Plaintiff's request for a front cuff pass on July 16, 2012. Id.

On July 27, 2012, in response to Plaintiff's sick call request, J. Slominski, SLPN (Senior Licensed Practical Nurse) assessed Plaintiff who complained of right shoulder pain. Id. at 325. Slominski indicated that Plaintiff had a limited range of motion in the right shoulder, but there was no swelling or deformity present. Id. Further, Plaintiff did not experience any extremity numbness or extremity tingling. Id. Slominski gave Plaintiff two to three tablets of 200 mg Ibuprofen by mouth for the pain, and instructed Plaintiff to report any skin discoloration, coolness, tingling, numbness, or increase in pain in the affected extremity immediately. Id. Slominski saw Plaintiff again on August 16, 2012, regarding Plaintiff's complaints of extreme pain to the right shoulder. Id. at 322. Plaintiff stated that "the black box caused new damage to [his] shoulder" and his shoulder would "dislocate throughout [the] day." Id. Plaintiff indicated that he had experienced extremity numbness

and extremity tingling, though Slominski observed no swelling or deformity. Id. Slominski gave Plaintiff two to three tablets of 200mg Ibuprofen and submitted a "routine referral to MD." Id.

On August 22, 2012, Dr. Lagman saw Plaintiff. Id. at 320. Plaintiff complained that he was in pain for three weeks, felt "like screws [were] tearing away," that his shoulder "dislocate[d] often with as much as lifting a food tray," and that it was "hard to sleep." Id. According to Plaintiff, he again requested a front cuff pass. Amended Complaint at 5. Dr. Lagman noted the scars from Plaintiff's previous endoscopic procedure of the right shoulder, but observed no swelling, deformity, or dislocation. Id. Dr. Lagman prescribed Excedrin for Plaintiff's pain, ordered an x-ray of Plaintiff's right shoulder, and denied Plaintiff's request for a front cuff pass. Id. at 320, 355, 407; Amended Complaint at 5. The x-ray of Plaintiff's right shoulder was performed on August 30, 2012,[6] and Dr. Lagman reviewed the x-ray on September 5, 2012, notating "post-surgical change. No acute process." Id. at 319, 406. On September 10, 2012, Dr. Espino reviewed Plaintiff's medical records and agreed with Dr. Lagman's assessment that a front cuff pass was not necessary. Id. at 319.

On September 24, 2012, in response to Plaintiff's sick call request, M. Bell, LPN (Licensed Practical Nurse) saw Plaintiff who complained of extreme right shoulder pain and the fact that Ibuprofen "work[ed] very little." Id. at 317. Bell notes there was no swelling or deformity present, and that Plaintiff did not experience any extremity numbness or extremity tingling. Id. Plaintiff did not received any treatment or medication on this visit, however Bell advised Plaintiff to limit his activities until the symptoms

---

[6] Plaintiff's right shoulder x-ray report states "There are surgical sutures in the humeral head. No fracture or significant osseous lesion is identified." Zawitz Aff. Ex. B-1 at 406.

improved. Id. On September 28, 2012, Slominski saw Plaintiff for his complaints of right shoulder pain from "being cuffed behind the back with black box." Id. at 316. Slominski noted that an x-ray of Plaintiff's right shoulder was performed on August 30, 2012, indicating no fracture or significant osseous lesion was identified. Id. Slominski gave Plaintiff Ibuprofen and advised Plaintiff to limit his activities to the right shoulder. Id.

On October 3, 2012, Bell saw Plaintiff regarding Plaintiff's complaints of left shoulder pain and upper chest pain. Id. at 315. Bell forwarded Plaintiff's "chart to a clinician for [a] routine referral." Id. Thereafter, Dr. Lagman evaluated Plaintiff for an MRI scan and a front cuff pass on October 17, 2012. Id. at 314. Dr. Lagman noted that on August 30, 2012, Plaintiff had an x-ray that revealed no significant osseous lesion, and therefore, no MRI was needed. Id. Further, Dr. Lagman assessed Plaintiff's shoulder pain with and without cuffs, and concluded a front cuff pass was not needed. Id.

On June 11, 2013, Dr. Espino prescribed 400mg Ibuprofen for Plaintiff's shoulder pain. Id. at 311, 352. On October 2, 2013, Dr. Espino examined Plaintiff for a "possible [left] bicep muscle separation."[7] Id. at 306. Dr. Espino gave Plaintiff a Toradol injection, increased Plaintiff's dosage of Ibuprofen to 600mg, and wrapped Plaintiff's left arm in an ace bandage. Id. at 306, 350, 352. Further, Dr. Espino submitted a referral seeking an urgent orthopedic consultation. Id. at 306, 372; P. Ex. G at 2. Dr. Espino performed a follow-up assessment of Plaintiff and approved a front cuff pass for Plaintiff on October 9, 2013. Zawitx Aff. Ex. B-1 at 305, 369; Resp. Ex. N. The front cuff pass expired on

---

[7] Dr. Espino notes that Plaintiff was "doing push ups" when Plaintiff experienced "sudden pain." Zawitz Aff. Ex. B-1 at 306. Plaintiff denies that he told Dr. Espino that he was doing push-ups at the time he injured his left shoulder. Resp. Ex. A. at 2. Plaintiff states that his shoulder injuries would not allow him to do "push ups, pull ups, or dips." Id. Viewing the evidence in the light most favorable to Plaintiff, the Court does not consider Dr. Espino's explanation for the cause of Plaintiff's left shoulder injury and pain.

6

December 9, 2013. Zawitx Aff. Ex. B-1 at 369; Resp. Ex. N. Dr. Espino re-wrapped Plaintiff's left arm and called "RNC" regarding the orthopedic referral. Zawitx Aff. Ex. B-1 at 305. On October 15, 2013, Dr. Espino prescribed Excedrin for Plaintiff's left bicep pain and again inquired about the orthopedic referral. Id. at 305, 350. On October 16, 2013, Dr. Espino saw Plaintiff and told him the orthopedic referral was not approved because "surgery was not indicated" instead, "symptomatic care" was recommended. Id. at 304, 372-73. Dr. Espino re-examined Plaintiff on November 6, 2013, noting limited range of motion of the left arm with weak flexion and increasing numbness of both upper extremities. Id. at 303. Dr. Espino prescribed Excedrin and ordered a physical therapy evaluation for strengthening exercises. Id. at 303, 370-71. The physical therapy evaluation was completed on January 29, 2014, and it was determined that Plaintiff should receive physical therapy two times per week for four weeks. Id. at 301, 370-71. Dr. Espino submitted a request for Plaintiff's physical therapy on February 4, 2014. Id. at 300, 349. Dr. Espino renewed Plaintiff's prescription for Excedrin on February 13, 2014. Id. at 299, 349. D. Varghese, ARNP (Advanced Registered Nurse Practitioner) renewed Plaintiff's prescription for Excedrin on March 3, 2014. Id. at 348.

Plaintiff received physical therapy from February 2014 through March 14, 2014. Id. at 291-98. On March 14, 2014, Connie Sauls, PTA (Physical Therapist Assistant) noted that Plaintiff had met the current goals set by the primary physical therapist, and while Plaintiff continued to experience discomfort in his left upper extremity, his range of motion and strength had improved. Id. at 291. On April 2, 2014, Plaintiff submitted a request for the renewal of his front cuff pass. Id. at 290. Dr. Espino denied Plaintiff's request to renew his front cuff pass due to security reasons on April 3, 2014. Id. Plaintiff submitted another

7

request for a front cuff pass on May 2, 2014. Id. at 288. Dr. R. Vivas denied the request for security reasons. Id. Plaintiff was transferred to an Indiana state prison in July 2014.

### IV. Summary of Arguments and Evidence

Dr. Espino argues that Plaintiff fails to "meet the standard of reckless indifference to the federally protected rights of others required" for an Eighth Amendment claim. Espino Motion at 2 (quotations and citations omitted). Dr. Espino submits an affidavit from Dr. Chad Zawitz, who opined that after review of Plaintiff's medical records, he "saw no evidence of any deliberate indifference or deviation from any standard of care by Dr. Espino at any time during Mr. Dausch's incarceration in the Florida Department of Corrections." Zawitz Aff. Ex. C. Dr. Espino also argues that Plaintiff's medical malpractice claim fails because Plaintiff did not comply with the pre-suit notice requirement. Lastly, Dr. Espino asserts that Plaintiff fails to demonstrate a reasonable basis for entitlement to punitive damages.

In response, Plaintiff contends there are disputed issues of material fact that preclude summary judgment of his Eighth Amendment claim. Further, Plaintiff asserts he is entitled to compensatory and punitive damages because there is evidence that his Eighth Amendment rights were violated. See Response at 8. Plaintiff does not present any argument or evidence in defense of his medical malpractice claim against Dr. Espino.

### V. Law and Conclusions

**A. Deliberate Indifference to Plaintiff's Serious Medical Needs**

The Eighth Amendment prohibits "deliberate indifference to a prisoner's serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a serious medical need; (2) the health

care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury." Dang by & through Dang v. Sheriff, Seminole Cty. Florida, 856 F.3d 842, 850 (11th Cir. 2017). This analysis contains both an objective and a subjective component.

First, a plaintiff must show an objectively serious medical need. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

For the subjective component, a plaintiff must show that the health care providers acted with deliberate indifference. To establish deliberate indifference, the plaintiff must prove "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." Dang by & through Dang, 856 F.3d at 850 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099–100 (11th Cir. 2014)). Thus, "[t]he plaintiff must prove that the defendant 'actually knew' of the risk -'[p]roof that the defendant should have perceived the risk, but did not, is insufficient.'" Kruse v. Williams, 592 F. App'x 848, 856 (11th Cir. 2014) (quoting Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (brackets in original)). In

addition, health care providers "who actually knew of a substantial risk to [an] inmate['s] health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994). Now, "[c]onduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (citing McElligott, 182 F.3d at 1255).

In this case, Dr. Espino presents no argument regarding whether Plaintiff had a serious medical need. Therefore, the Court assumes for purposes of summary judgment that Plaintiff has demonstrated a serious medical need. Instead, Dr. Espino argues that there is no evidence that he was aware of Plaintiff's serious medical need and failed to treat it. The Court agrees.

The evidence reveals that Plaintiff was regularly and consistently being seen by health care providers, including Dr. Espino to deal with his shoulder conditions. In particular, Dr. Espino examined Plaintiff on July 11, 2012, October 2, 2013, October 9, 2013, October 16, 2013, and November 6, 2013. Dr. Espino also prescribed medication for Plaintiff's shoulder pain when necessary. After Plaintiff was denied an orthopedic consultation, Dr. Espino continued to provide medical services to Plaintiff and was able to get Plaintiff into physical therapy. The evidence reveals that Plaintiff experienced benefits from the physical therapy. Now, with respect to the times Dr. Espino denied

Plaintiff a front cuff pass, there is no evidence that a front cuff pass was medically necessary or that Dr. Espino disregarded a risk of serious harm to Plaintiff.

Given the evidence viewed in the light most favorable to Plaintiff, it does not demonstrate that Dr. Espino's medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to constitute a violation of the Eighth Amendment. Dang by & through Dang, 856 F.3d at 850. Therefore, the Court **grants** the Espino Motion as it relates to Plaintiff's Eighth Amendment claim against Dr. Espino.

### B. Medical Malpractice

Before claims for medical negligence or medical malpractice may be initiated in a lawsuit, a plaintiff must comply with certain pre-suit requirements set forth in Chapter 766, Florida Statutes, commonly known as Florida's Medical Malpractice Reform Act of 1985. Under Chapter 766, a plaintiff must give a ninety-day notice of "intent to initiate litigation for medical negligence" or medical malpractice. Fla. Stat. § 766.106(2)(a)-(3)(a). This pre-suit requirement applies to incarcerated plaintiffs, see O'Hanrahan v. Moore, 731 So. 2d 95 (Fla. 4th DCA 1999), and to cases filed in federal court. See Johnson v. McNeil, 278 F. App'x 866 (11th Cir. 2008); Clark v. Sarasota Cty. Public Hosp. Bd., 65 F. Supp. 2d 1308 (M.D. Fla. 1998). Thus, a medical negligence or medical malpractice claim must be dismissed if the plaintiff fails to comply with the pre-suit requirement. See, e.g., Gross v. White, 340 F. App'x 527, 532 (11th Cir. 2009) (finding inmate plaintiff in a civil rights action filed in federal court did not meet the procedural requirements necessary to pursue a medical negligence claim under Florida law); Johnson, 278 F. App'x at 872 (affirming the federal district court finding that Florida law mandates the dismissal of a medical

malpractice claim when the claimant, the personal representative for the estate of the deceased inmate, had not fulfilled the pre-suit requirements under Florida law). However, the plaintiff may cure the default and proceed with the suit as long as the pre-suit requirement is fulfilled within the applicable statute of limitations. Johnson, 278 F. App'x at 871 (citing Kukral v. Mekras, 679 So. 2d 278, 283 (Fla. 1996)).

Dr. Espino argues that Plaintiff's medical malpractice claim should be dismissed because Plaintiff did not send him the required pre-suit notice and the statute of limitations to do so has expired. Plaintiff does not address this issue in his Response or allege in his Complaint that he complied with the pre-suit notice requirement.

Based on Plaintiff's lack of response, the Court can only conclude that Plaintiff failed to provide Dr. Espino with a pre-suit notice. Moreover, Plaintiff cannot cure this deficiency now because the statute of limitations period has passed. See Fla. Stat. § 95.11(4)(b)("an action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued."). For these reasons, Plaintiff's medical malpractice claim against Dr. Espino is due to be dismissed. Therefore, the Court **grants** the Espino Motion as it relates to Plaintiff's medical malpractice claim against Dr. Espino. Based on the foregoing, it is now

**ORDERED:**

1. Defendant Gonzalo Espino's Motion for Summary Judgment (Doc. 59) is **GRANTED**.

2. Plaintiff's Eighth Amendment and medical malpractice claims against Defendant G. A. Espino are **DISMISSED with prejudice**.

3. Defendant G. A. Espino is **DISMISSED** from this action.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of August, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sflc

c: Carl E. Dausch, Jr.
Counsel of Record